JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

Proceedings: **[IN CHAMBERS] Order Regarding Motion for Default Judgment [88]**

Before the Court is an application for default judgment by Plaintiff Securities and Exchange Commission (the "SEC") against Defendants Equifunds, Inc. ("Equifunds") and Ice Fleet LLC ("Ice Fleet") (collectively, "Entity Defendants") and John David Gessin ("Gessin") (collectively, "Defendants"). (Mot., Dkt. No. 88.) Defendants have not filed an opposition.

For the following reasons, the Court **GRANTS** the motion.

**I. BACKGROUND**

The following factual background is taken from the SEC's Complaint unless otherwise specified. (See Compl., Dkt. No. 1.)

Defendant Equifunds is a California corporation with its principal place of business in Laguna Niguel, California. (Compl. ¶ 12.) Defendant Ice Fleet is a Delaware LLC with its principal place of business in Beverly Hills, California. (Id. ¶ 13.) Defendant Gessin founded both entities and was their sole principal, exercising exclusive authority over their business operations and finances. (Id. ¶ 11.)

The SEC alleges that Gessin used the Entity Defendants to target and defraud a small group of unsophisticated retail investors, including an artist, a U.S. military veteran, and an elderly retired nurse. (Id. ¶ 18.) Gessin, often using the alias "John David" to hide his criminal history and prior lawsuits, presented himself as a successful venture capitalist. (Id. ¶ 19.) Gessin solicited investments for purported business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

operations related to the purchase and distribution of fuel, including biodiesel fuels. (Id. ¶¶ 20, 23.)

The SEC alleges that Defendants falsely promoted the ventures to investors in various ways. Defendants offered investments in the form of promissory notes with guaranteed, above-market interest rated ranging from 12% to 24% annually. (Id. ¶¶ 21, 24, 40.) Gessin falsely told investors that he was purchasing a commercial fuel depot ("the Mitchell depot"), that he had a contract with the Mexican state-owned oil company Pemex, and that investors' investments were 100% protected by an insurance policy. (Id. ¶¶ 23, 38, 42.) Gessin represented that the investor funds would be used solely for business purposes and that he was not using "a dime" for personal benefit. (Id. ¶ 32.) In reality, the SEC alleges that Gessin used only a fraction of the funds for business purposes, instead misappropriating the money to fund his personal lifestyle, including payments for a mortgage, automobiles, luxury meals, and gifts to family and friends. (Id. ¶ 56.)

In March 2020, Defendants abruptly stopped making interest payments to investors. (Id. ¶ 49–50.) Gessin falsely blamed the COVID-19 pandemic for business disruptions despite the Mitchell depot operating normally. (Id.)

The SEC filed its Complaint on March 14, 2023. (See Compl., generally.) Procedurally, after the initial defense counsel withdrew in February 27, 2025, the Court ordered the Entity Defendants to retain new counsel, because corporate entities cannot appear pro se. (Dkt. No. 49 at 4.) After the Entity Defendants failed to do so, the Court granted an extension, explicitly warning that failure to comply would result in default. (Dkt. No. 57.) No counsel appeared for the Entity Defendants by the final deadline. Consequently, the Clerk of the Court entered default against them on April 29, 2025. (Dkt. No. 63.) Similarly, on July 14, 2025, the Clerk of Court entered default against Defendant Gessin after his failure to plead or otherwise defend this action. (Dkt. No. 75.)

The SEC filed the Motion for Entry for Default Judgment against Entity Defendants on May 30, 2025. (Dkt. No. 69.) Because the SEC failed to produce evidence of damages, this Court denied the motion and gave the SEC the opportunity to file a renewed motion for default judgment. (Dkt. No. 72.) The SEC then filed this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |

| | |
|---|---|
| Title | Securities and Exchange Commission v. John David Gessin et al |

Motion for Entry for Default Judgment, against all Defendants, on December 3, 2025. (See Mot., generally.)

## II. LEGAL STANDARD

Before a court can enter a default judgment against a defendant, a plaintiff must satisfy the procedural and substantive requirements for default judgment.

### A. Procedural Requirements

For a default judgment, a plaintiff must satisfy the procedural requirements of the Federal Rules of Civil Procedure. Rule 54(c) states that a default judgment cannot grant relief that is different from the requested relief in a complaint. Fed. R. Civ. P. 54(c). Under Rule 55(a), a clerk must enter a default when a defendant has failed to plead, defend, or appear in any form. Fed. R. Civ. P. 55(a). Lastly, if a defaulting party has appeared in an action, then a plaintiff needs to serve a motion for default on the defaulting party. Fed. R. Civ. P. 55(b)(2).

In addition, a party seeking a default judgment must satisfy the requirements of Local Rule 55-1. To satisfy Local Rule 55-1, a plaintiff needs to submit a declaration establishing (1) when and against whom the clerk entered a default, (2) the pleading on which default was entered, (3) whether the defaulting party is an infant or incompetent "and if so, whether that person is represented by a guardian, committee, conservator or other representative," (4) whether the Servicemembers Civil Relief Act applies; and (5) whether the plaintiff served a notice of the motion on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). L.R. 55-1.

### B. Substantive Requirements

The Ninth Circuit has identified seven factors (together, the "Eitel factors") that a court considers when determining whether to grant a default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at issue; (5) the possibility of a dispute regarding material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. Eitel v. McCool, 782 F.2d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

1470, 1471–72 (9th Cir. 1986).

Taken together, the second and third Eitel factors, related to the merits of a plaintiff's claims and the sufficiency of the complaint, address whether the party seeking default judgment has stated a claim upon which it may recover. See, e.g., Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002)).

On an application for a default judgment, the factual allegations in the complaint are taken as true, with the exception of those regarding damages. See Pope v. United States, 323 U.S. 1, 12 (1944); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir.1992).

### III. DISCUSSION

*A. Procedural Requirements*

The SEC has met the procedural requirements for a default judgment against Defendants. The SEC's complaint requests a permanent injunction, disgorgement, prejudgment interest, and civil penalties. (Compl. ¶ 10.) Because the motion for default judgment seeks the same relief, it satisfies Rule 54(c)'s requirement. See Fed. R Civ. P. 54(c).

The SEC submitted a declaration in satisfaction of Local Rule 55-1. (See Declaration of Jennifer L. Farer ("Farer Decl."), Dkt. No. 88-3.) The declaration correctly states that default was entered with respect to the Complaint against the Entity Defendants on April 29, 2025 and against Gessin on July 14, 2025. (Id. ¶ 2; Dkt. No. 63, 75.) The declaration also states that the Defendants are not infants, incompetent persons, or currently serving in the United State military such that the Service members Civil Relief Act applied. (Id. ¶ 3.) Finally, service of this motion is not required because Entity Defendants failed to continue to defend this case and Gessin failed to defend the case entirely. Fed. R. Civ. P. 55(b)(2); (Mot. at 2.) Here, the declaration states that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

Defendants were still served. (Id. ¶ 4.) Therefore, all elements of Local Rule 55-1 have been satisfied.

    *B.*    *Substantive Requirements*

All Eitel factors weigh in favor of granting default judgment. The Court finds that the SEC has met the substantive requirements for entry of default judgment against the Defendants.

    1.    Possibility of Prejudice to the SEC

Under the first Eitel factor, the Court considers the possibility of prejudice to the plaintiff. Eitel, 782 F. 2d at 1472. A plaintiff would be prejudiced by a court's refusal to enter default judgment if the plaintiff would then have no other recourse for recovery. PepsiCo, Inc., 238 F. Supp. 2d at 1177. Because Defendants failed to continue to defend this action, a default judgment is the SEC's only form of relief. The SEC would be prejudiced if the Court denied default judgment.

    2.    Merits of the SEC's Substantive Claim and Sufficiency of the Complaint

Taken together, the second and third Eitel factors, related to the merits of a plaintiff's claims and the sufficiency of the complaint, address whether the party seeking default judgment has stated a claim upon which it may recover. See, e.g., Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002)).

The SEC has sufficiently stated claims for violations of Section 17(a) of the Securities Act, and Section 10(b) of the Securities Exchange Act and Rule 10b-5 thereunder. To establish a violation of these sections, the SEC must prove: (1) engage in fraudulent conduct, either through a fraudulent scheme or material misrepresentations or omissions; (2) in connection with the offer, purchase, or sale of securities; (3) by means of interstate commerce; and (4) with scienter. See SEC v. Phan, 500 F.3d 895, 907-08 (9th Cir. 2007). The elements of violations of Sections 17(a)(2) or (3) are the same, though scienter is not required—negligence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

is sufficient.  Aaron v. SEC, 446 U.S. 680, 701-02 (1980).  Section 17(a)(2) requires additional proof that the defendant obtained "money or property" through the alleged misrepresentations.  See 15 U.S.C. § 77q(a)(2).  Accepting the allegations in the Complaint as true, the SEC has established that the Defendants engaged in securities fraud.

### a.   *Material Misrepresentations and the Omissions*

The Complaint alleges numerous material misrepresentations and omissions. These include false statements about Defendants' business operations and contracts, such as representing that they were purchasing Mitchell depot and had a binding contract with the Mexican state-owned oil company, Pemex, when neither statement was true. (Compl. ¶¶ 23, 38.)  Furthermore, Defendants falsely claimed that investor funds would be used solely for business purposes and that Gessin was not taking "a dime" for himself, all while he was actively misappropriating funds for personal expenses like mortgage payments, cars, and luxury gifts.  (Id. ¶¶ 32, 56.)  In addition, Gessin falsely assured some investors that their investments were 100% protected by an insurance policy that did not exist.  (Id. ¶¶ 34, 42.)  Moreover, Gessin used an alias to deliberately hide his true identity, criminal history, and prior lawsuits involving allegations of fraud from investors.  (Id. ¶¶ 19, 25, 35, 44.)  These facts are material, as there is a substantial likelihood that their disclosure would have been viewed by a reasonable investor as having significantly altered the "total mix" of critical information to make an investment decision.  See Basic Inc. V. Levinson, 485 U.S. 224, 231-32 (1988).  Thus, the Court finds that Defendants made material misrepresentations and omissions.

### b.   *Connection with the Sale of Security*

This fraudulent conduct was in connection with the offer and sale of securities. The promissory notes issued by the Defendants, which promised specific rates of return based on the managerial efforts Gessin, qualify as "investment contracts" and "notes," both of which are defined as securities under the federal securities laws.  See SEC v. W.J. Howey Co., 328 U.S. 293, 298–99 (1946); Reves v. Ernst & Young, 494 U.S. 56 (1990) (finding notes to be securities where the "seller's purpose is to raise money for the general use of a business enterprise" and "the buyer is interested primarily in the profit the note is expected to generate").  (Compl. ¶¶ 21, 28, 40.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

The Howey test to qualify for an investment contract requires: (1) an investment of money; (2) in a common enterprise, (3) with an expectation of profits derived solely from the efforts of others. Howey, 328 U.S. at 298–99.

### i. Investment of Money

First, the Court finds that there is an investment of money. Here, the investors made an investment of money, totaling over $1.6 million. (Compl. ¶¶ 5, 24, 28, 43, 47.)

### ii. Common Enterprise

Second, the Court assesses whether there is a common enterprise. Investor funds were pooled into Defendants' bank accounts to be used for the purported business ventures. (Id. ¶¶ 28, 57.) The second Howey element can be satisfied in the Ninth Circuit by the existence of either horizontal commonality (a pooling of investor funds and/or interests) or strict vertical commonality (whereby the fortunes of the investor are linked with those of the promoter). See SEC v. R.G. Reynolds Enters., Inc., 952 F.2d 1125, 1130 (9th Cir. 1991). Pooling the investor's funds into Defendants' bank accounts and linking Gessin with the investors' fortunes and their purported investment returns indicate horizontal and vertical commonality, respectively. (Compl. ¶¶ 56–57.) Thus, the Court finds that there is a common enterprise.

### iii. Expectation of Profits derived Solely from Other's Efforts

Third, the Court assesses whether investors had an expectation of profits derived solely from the efforts of others. The third Howey element is met if the actions of others are "undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." Id. at 1131 (citations omitted). The investors were entirely passive and relied completely on Gessin's promised entrepreneurial and managerial efforts in the fuel business to generate their promised high-yield interest payments. (Mot. at 12). Thus, the Court finds that investors had an expectation of profits derived solely from the efforts of others.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

Therefore, the investment scheme satisfies all three Howey factors. Thus, the Court finds that the instruments sold to investors are securities under federal law.

           c.     *Use of Interstate Commerce*

The Court continues to assess fraudulent conduct by looking at whether there was use of interstate commerce. Wires are channels or instrumentalities of interstate commerce. United States v. Jinian, 725 F.3d 954, 968 (9th Cir. 2013). The Complaint alleges that Defendants used means and instrumentalities of interstate commerce to carry out the fraud, including using wire transfers to move investor funds between accounts. (Compl. ¶¶ 28, 56–58.) Thus, the Court finds that Defendants used means and instrumentalities of interstate commerce to carry out fraud.

           d.     *Scienter*

The Court finds that the Complaint sufficiently alleges that Defendants acted with scienter–a mental state embracing intent to deceive, manipulate, or defraud. See Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1568 (9th Cir. 1990) (citations omitted). Conduct is considered reckless if it is an extreme departure from the standards of ordinary care." Id. at 1569. Gessin's detailed and fabricated stories (Compl. ¶¶ 23, 32, 34, 38, 42), Gessin's use of an alias (id. ¶¶ 19, 27), and Gessin's direct misappropriation of funds constitute strong evidence of intentional fraudulent conduct that surpasses mere negligence (id. ¶¶ 56–67). This scienter is imputed to the Entity Defendants, Equifunds and Ice Fleet, as Gessin exercised control over their operations and finance. (Id. ¶ 5.) See In re ChinaCast Educ. Corp. Sec. Litig., 809 F.3d 471, 476 (9th Cir. 2015). Thus, the Court finds that Defendants acted with scienter.

Thus, the Court finds that the Complaint sufficiently pleads each element of a securities fraud violation under both the scienter and negligence standards required by the relevant statutes. Therefore, the second and third Eitel factors weigh in favor of granting default judgment.

           3.     Sum of Money at Stake

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

The fourth Eitel factor considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176. The Complaint alleges a fraud of more than $1.6 million.[1] (Compl. ¶ 5.) The Court finds that the requested remedies of disgorgement, prejudgment interest, and civil penalties to be reasonable and proportionate under the circumstances because they match the amount of money Defendants raised through their fraudulent scheme. This sum is directly proportional to the seriousness of Defendant's conduct. Accordingly, this factor leans in favor of granting default judgment.

### 4. Possibility of a Dispute Regarding Material Facts

On an application for a default judgment, the factual allegations in the complaint are taken as true, with the exception of those regarding damages. See Pope, 323 U.S. at 12; Geddes, 559 F.2d at 560. Because the SEC is seeking disgorgement, a detailed accounting is not necessary. SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1474–75 (2d Cir. 1996). The SEC need only provide a reasonable approximation of the Defendants' unjust enrichment. Id. Here, the Defendants have failed to continue to defend against or challenge the SEC's factual allegations. (See Compl., generally; see Mot., generally.) But the Court denied the SEC's original Motion for Default Judgment because it lacked affidavits, declarations, or otherwise to support the $1.6 million at issue. (Dkt. No. 72 at 8.)

On this Motion, the SEC has adequately provided support for the requested disgorgement. The motion included a declaration from Jamie Wohlert, a Senior Accountant at the SEC who investigated Defendants' financial records. (See Declaration of Jamie C. Wohlert ("Wohlert Decl."), Dkt. No. 88-2.) As described in the declaration, the SEC attaches exhibits containing summaries tables of financial records, promissory notes, and transaction details, all to prove the $1.6 million disgorgement. (See Ex. 1–23, Dkt. No. 88-2.) The Court finds that the SEC has made a sufficient evidentiary showing, and thus the fifth Eitel factor favors default judgment.

---

[1] The SEC also seeks a permanent injunction prohibiting all Defendants from future violations of Securities law and Gessin from transacting in securities or serving as an officer or director. (Mot. at 16–18.) The request for permanent injunction is inapplicable to this factor. See SEC v. SHE Beverage Co., 2023 WL 6147134, at *5–6 (S.D. Cal. Sept. 18, 2023).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

     5.     <u>Excusable Neglect</u>

     The sixth <u>Eitel</u> factor favors default judgment when the defendant has been properly served." <u>Wecosign, Inc. v. IFG Holdings, Inc.</u>, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (citing <u>Landstar Ranger, Inc. v. Parth Enterprises, Inc.</u>, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010)). Here, Entity Defendants were represented by counsel before counsel withdrew. The Court then gave Entity Defendants numerous opportunities and explicit warnings to retain new counsel. Entity Defendant's failure to do so demonstrates a deliberate choice not to defend this action, not excusable neglect. Similarly, Defendant Gessin has failed to plead or otherwise defend this action. (<u>See</u> Default, Dkt. No. 75.) Thus, this factor favors default judgment.

     6.     <u>Policy Favoring Decision on the Merits</u>

     "Cases should be decided on their merits wherever possible." <u>Eitel</u>, 782 F.2d at 1472. However, failure to appear makes it impractical for the Court to make a decision on the merits. <u>Penpower Tech. Ltd. v. S.P.C. Tech.</u>, 627 F.2d 1083, 1093 (N.D. Cal. 2008). Here, Defendants have not defended themselves in this action. Thus, the seventh <u>Eitel</u> factor regarding policy weighs in favor of default judgment.

     The Court finds that the <u>Eitel</u> factors favor granting the SEC's motion for default judgment. Additionally, by filing this motion against Entity Defendants and Gessin, the SEC corrected the procedural issue raised by <u>Frow v. De La Vega</u>, which limits the entering of default judgment until the matter has been adjudicated with regard to all defendants. 82 U.S. 552 (1872); <u>see also</u> <u>Neilson v. Change</u> (<u>In re First T.D. & Inv. Inc.</u>), 253 F.3d 520, 532 (9th Cir. 2001); (Dkt. No. 71 at 10 n.4). Thus, the SEC has fulfilled the procedural and substantive requirements to move for default judgment. The Court next examines SEC's requested relief.

     C.     *Requested Relief*

     The SEC requests (1) an injunction against Defendants from violating the antifraud provisions of the federal securities laws; (2) an officer and director bar against Gessin; (3) disgorgement of all ill-gotten gains and prejudgment interest; (4) civil

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:23-cv-00460-JVS-ADS        Date   January 5, 2026

Title   Securities and Exchange Commission v. John David Gessin et al

monetary penalties from Defendant Gessin.  (Mot. at 16.)  As required by Rule 54(c), this is the same relief as what was demanded in the pleadings, except the SEC no longer seeks civil monetary penalties against the Entity Defendants.  (Id.)

      1.     Permanent Injunctions

The SEC seeks a permanent injunction against all Defendants from future violations of the antifraud provisions of the federal securities laws.  (Id. at 17.)  To obtain a permanent injunction, the SEC "has the burden of showing there was a reasonable likelihood of future violations of the securities laws."  U.S. SEC v. Fehn, 97 F.3d 1276, 1295 (9th Cir. 1996).  To assess the likelihood of future violations, courts look to factors including:

> (1) the degree of scienter involved;
> (2) the isolated or recurrent nature of the infraction;
> (3) the defendant's recognition of the wrongful nature of his conduct;
> (4) the likelihood, because of defendant's professional occupation, that future violations might occur;
> (5) and the sincerity of his assurances against future violations.

Id. at 1295–96 (citing SEC v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980)).  The Court agrees with the SEC that under these factors, this case evinces a likelihood of future violations.  First, the scheme involved a high degree of scienter: Gessin knowingly misled investors about his background, business relationships, and the use of their funds.  (Mot. at 13, 16.)  Second, Defendants' conduct took place over a near three-year period and involved the same group of unsophisticated investors.  (Id. at 17.)  Gessin's long history of bankruptcies, lawsuits, and judgments against him for fraud suggest that future violations may occur.  (Id. at 13, 17.)  As to the third and fifth factors, Defendants have failed to recognize any wrongdoing, altogether neglecting to participate in this litigation.  (Id.)

Accordingly, the Court finds a permanent injunction against the Defendants from future violations of the antifraud provisions of the federal securities laws to be just.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

       2.      <u>Conduct-Based Injunction against Gessin</u>

      The SEC seeks an injunction against Gessin from transacting in securities, other than the purchase or sale of securities from his own personal account. (Mot. at 17.) The SEC argues this relief is important in addition to the general "obey-the-law injunction[]" because this measure directly targets Gessin's specific misconduct. (<u>Id.</u> at 17–18.)

      The Court has discretion to fashion "any equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5). Just as the SEC adequately showed that future violation is likely for all Defendants, so too did it show that there is a reasonable likelihood that Gessin will engage in actions that a conduct-based injunction seeks to prohibit. <u>See</u> <u>SEC v. Wellness Matrix Grp., Inc.</u>, 2023 WL 5235177, at *7 (C.D. Cal. Aug. 10, 2023) (finding both a permanent injunction and a content-based injunction appropriate because of the likelihood of defendant's repeated actions). In particular, Gessin's scienter and history of fraud makes future violation more likely. <u>See</u> <u>SEC v. Nguyen</u>, 2024 WL 3381583, at *3 (C.D. Cal. Feb. 23, 2024) (issuing both a permanent and a conduct-based injunction where defendant acted with a high degree of scienter and his conduct was recurring). Thus, for the same reasons discussed in Section C.1, a conduct-based injunction prohibiting Gessin from transacting in securities, other than the purchase or sale of securities from his own personal account, is appropriate.

      The SEC also seeks to enjoin Gessin from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12, 15 U.S.C. § 78l, or that is required to file reports pursuant to Exchange Act Section 15(d), 15 U.S.C. § 78o(d). (Mot. at 18.)

      A district court has "substantial discretion" in deciding whether to impose an officer and director bar. <u>SEC v. First Pac. Bancorp</u>, 142 F.3d 1186, 1193 (9th Cir. 1998) (citing <u>SEC v. Patel</u>, 61 F.3d 137, 141 (2d Cir. 1995)). An officer or director bar is appropriate "if that person's misconduct demonstrated unfitness to serve as an officer or director." 15 U.S.C. § 78u(d)(2). This Court looks to: (1) the egregiousness of Gessin's securities law violation; (2) whether Gessin is a repeat offender; (3) Gessin's role or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:23-cv-00460-JVS-ADS                                    Date  January 5, 2026

Title  Securities and Exchange Commission v. John David Gessin et al

position when he engaged in the fraud; (4) the degree of scienter; (5) Gessin's economic stake; and (6) the likelihood Gessin will engage in future misconduct. Wellness Matrix Grp., 2023 WL 5235177, at *7 (listing factors) (citing First Pac. Bancorp, 142 F.3d at 1193.) Over a three-year period, Gessin exploited unsophisticated investors, including an elderly woman in a nursing home, to solicit investments. (Mot. at 16–17.) Additionally, this scheme was not Gessin's first; he has a history of bankruptcies, lawsuits, and judgments against him for fraud. (Id.); Wellness Matrix Grp., 2023 WL 5235177, at *7–8 (finding a permanent officer and director bar appropriate because the defendant, who had a long history of engaging in fraudulent schemes, exploited the uncertain nature of the COVID-19 pandemic to induce investors). Thus, the Court finds a permanent officer and director bar appropriate.

        3.      <u>Disgorgement & Prejudgment Interest</u>

Disgorgement is appropriate to derive Defendants of their unjust enrichment. See Bancorp, 142 F.3d at 1191 ("The district court has broad equity powers to order the disgorgement of "ill-gotten gains" obtained through the violation of the securities laws.") "A disgorgement calculation requires only a reasonable approximation of profits causally connected to the violation, and the amount of disgorgement should include all gains flowing from the illegal activities." SEC v. JT Wallenbrock Assocs., 440 F.3d 1109, 1113-14 (9th Cir. 2006) (cleaned up).

The SEC seeks calculates Defendants' unlawful gains at $1,230,807.[2] (Mot. at 19.) This represents the amount raised by Defendants from the five investors for the period of January 2017 to 2020, $1,626,874, minus the payments Defendants made to investors during that period, $396,067. (Id.; Wohlert Decl. at ¶¶ 5–9, 11.) This value is

---

[2] The SEC notes that one of the investors made a deposit for a total of $1,100,000, but additional evidence, including handwritten notes and promissory notes, indicates that the investor invested an additional $100,000. (Wohlert Decl. ¶ 7(b).) The Court finds that the SEC has provided adequate evidence of this additional investment, making the total investment "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." Citizens Bus. Bank v. Vessel Bellezza, 2020 WL 7064247, at *3 (C.D. Cal. Oct. 27, 2020). Thus, the Court includes the additional $100,000 in its calculation for disgorgement and prejudgment interest.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:23-cv-00460-JVS-ADS  Date January 5, 2026

Title Securities and Exchange Commission v. John David Gessin et al

not offset by any legitimate business expenses because the SEC could not determine the legitimacy of expenses and Defendants failed to provided further information. See SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1096 (9th Cir. 2010) (finding that once the SEC establishes a reasonable approximation of the defendants' actual profits, defendants have the burden to demonstrate that the disgorgement calculation was not reasonable); SEC v. Giguiere, 2024 WL 3550395, at *6 (S.D. Cal. June 11, 2024) ("In the absence of proof that the expenses were incurred for a legitimate purpose, the Court cannot deduct any of the funds . . .").

Prejudgment interest is also appropriate. SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1099-1100 (9th Cir. 2010) (affirming the lower court's award of prejudgment interest to prevent defendants from benefitting from their unlawful gains). Courts recognize the SEC's use of the tax underpayment rate, provided by 26 U.S.C. § 6621, to calculate prejudgment interest on disgorgement. See id. The SEC properly applied this interest rate for the period of March 2, 2020 (the date of the last transaction between Gessin and investors) and July 13, 2025, the date the Court entered default against Gessin, (Dkt. No. 75). (Wohlert Decl. at ¶¶ 10–11, 13.) Thus, the total value of the prejudgment interest is $410,116.

The SEC requests that the total amount, for $1,640,923, be awarded on a joint and several basis from all Defendants. (Mot. at 20.) "Where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained proceeds." First Pac. Bancorp, 142 F.3d at 1191; see also SEC v. Wilde, 2013 WL 2303761, at *2 (C.D. Cal. May 20, 2013) (including prejudgment interest in the amount owed by each defendant in a joint and several disgorgement order). In this case, Gessin, Equifunds, and Ice Fleet closely collaborated; Gessin controlled and commingled funds with the Entity Defendants to carry out and jointly benefit from the scheme. (See Mot. at 20.) Thus, the Court finds that the disgorgement and prejudgment interest amount of $1,640,923 is warranted, and that all Defendants are jointly and severally liable.

    4.    <u>Civil Penalties against Gessin</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

    The SEC seeks civil penalties against Gessin totaling $945,804.  (Mot. at 22.) Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), enables the Court to impose civil penalties in enforcement actions to deter similar violations in the future.  SEC v. Sripetch, 2024 WL 5320192, at *5 (S.D. Cal. Jan. 22, 2024).  Courts use the Murphy factors to determine if a civil penalty should apply.  SEC v. Husain, 70 F.4th 1173, 1184 (9th Cir. 2023) (citing Murphy, 626 F.2d 633, 655).  The Court's analysis of the Murphy factors in Section C.1 applies, rendering a civil penalty appropriate, particularly given Gessin's controlling role.  The Court next considers the amount of the penalty.

    The Securities Act and the Securities and Exchange Act establish three tiers of penalties in increasing levels of severity.  U.S.C. § 77t(d)(2).  A second tier penalty is warranted when a violation involves "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."  15 U.S.C. § 77t(d)(2)(C), 78u(d)(3)(B)(iii), 80b-9(e)(2)(C).  The third tier, the most severe, also requires that the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  Id.  Gessin's scheme defrauded investors of over $1.2 million.  Thus, the Court finds the third tier penalty appropriate.

    The statute sets the third tier penalty at "$100,000 for a natural person," subject to the Federal Civil Penalties Inflation Adjustment Act of 1990 ("CPIAA").  Id.; 28 U.S.C. § 2461 note § 3(2); 17 C.F.R. § 201.1001(a), (b); see SEC v. Davenport, 2025 WL 1914897, at *13 (C.D. Cal. Apr. 24, 2025) (calculating third-tier civil penalties under the CPIAA).  For violations that occurred after November 2, 2015, the adjusted penalty amounts in the SEC's annual "Adjustments to Civil Monetary Penalty Amounts" apply.  See SEC Release Nos. 3311350; 34-102134; IA-6808; IC-35442 at 7, dated January 7, 2025 (effective January 15, 2025).  As of January 25, 2025, the maximum penalty for a natural person under tier three is $236,451.  Id. at 5.

    Courts calculate civil penalties based on a per victim methodology.  See SEC v. Yang, 2021 WL 1234886, at *12 (C.D. Cal. Feb. 16, 2021).  Thus, $236,451 x 4 =

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:23-cv-00460-JVS-ADS | Date | January 5, 2026 |
| Title | Securities and Exchange Commission v. John David Gessin et al | | |

$945,804.[3]  Accordingly, the Court finds that the SEC's requested civil penalty of $945,804 is appropriate.

## IV. CONCLUSION

The Court finds that the SEC has met its procedural and substantive requirements for default judgment, and that the requested relief is reasonable. For the foregoing reasons, the Court **GRANTS** the motion for default judgment and awards:

(1) an injunction against Defendants from violating the antifraud provisions of the federal securities laws;
(2) a conduct-based injunction and officer and director bar against Gessin;
(3) disgorgement of all ill-gotten gains and prejudgment interest from all Defendants, jointly and severally, for a total of $1,640,923;
(4) civil monetary penalties from Defendant Gessin for $945,804.

**IT IS SO ORDERED.**

---

[3] Because two of the investors are married and invested together, the SEC treats them as one investor for the purposes of the penalty calculation. (Mot. at 22 n.5.)